File Copy

COMMONWEALTH OF PENNSYLVANIA
COUNTY OF ALLEGHENY



**Arrest Warrant**

Commonwealth of Pennsylvania
v.
Moshe Silber

| | |
|---|---|
| Mag. Dist. No: | MDJ-05-2-14 |
| MDJ Name: | Honorable Richard D. Olasz Jr. |
| Address: | 2629 Skyline Drive |
| | West Mifflin, PA 15122 |
| Telephone: | 412-466-1503 |

| | | | |
|---|---|---|---|
| Complaint No.: | ASAP-1028865 | Issued For: | Moshe Silber |
| Incident No.: | I-247-2024 | Docket No: | MJ-05214-CR-0000079-2025 |
| Charging Officer: | Freeman, Ronald P. | | |
| Arresting Agency: | Allegheny County District Attorney | | |
| Case Filed: | 02/04/2025 | NCIC OFF: | |
| OTN: | R 896175-0 | OOC: | |
| Reason For Warrant: | Felony | WARRANT ID: | DIS714868986 |
| Offense Date: | 03/01/2023 | Warrant Control No: | 05214-AW-0000044-2025 |
| Lead Offense: | 18 § 3921 §§ A THEFT BY UNLAWFUL TAKING | | |

**TO THE OFFICER: Ronald P. Freeman**

In the name of the Commonwealth of Pennsylvania, you are commanded to take the defendant, Moshe Silber, into custody. When the defendant is taken into custody, bring the defendant before me at the Court address shown above to answer the complaint charging the defendant with the offense(s) set forth above and further to be dealt with according to law

Witness the hand and official seal of the issuing authority on this 4th day of February, 2025.

February 04, 2025
_____
Date



Magisterial District Judge Richard D. Olasz Jr.



MJ-05214-CR-0000079-2025          05214-AW-0000044-2025          Moshe Silber

MDJS 417
Printed: 02/04/2025 10:48:41AM

1

  **FREE INTERPRETER**
www.pacourts.us/language-rights
412-350-5419

**File Copy**

Commonwealth of Pennsylvania
v.
Moshe Silber

**Warrant Control No: 05214-AW-0000044-2025**
Docket No: MJ-05214-CR-0000079-2025
OTN: R 896175-0

## RETURN WHERE DEFENDANT FOUND

By authority of this warrant, on _____, 20 _____

I took into custody the within named _____, and he/she is

☐ before you for disposition.

☐ In the _____ Prison.

## RETURN WHERE DEFENDANT IS NOT FOUND

☐ After careful search, I cannot find the within named defendant.

_____
(Signature of Police Officer - Name and Title)

| Service Costs: | | Additional Statutorily Authorized Service Costs: | | |
|---|---|---|---|---|
| Warrant | _____ | _____ | _____ |
| Miles @ | _____ | _____ | _____ |
| Commitments | _____ | _____ | _____ |
| Miles @ | _____ | _____ | _____ |
| Convey/Transport | _____ | _____ | _____ |
| Miles @ | _____ | _____ | _____ |
| | | Total | _____ |

FREE INTERPRETER
www.pacourts.us/language-rights
412-350-5419

File Copy

Commonwealth of Pennsylvania
v.
Moshe Silber

**Warrant Control No: 05214-AW-0000044-2025**
Docket No: MJ-05214-CR-0000079-2025
OTN: R 896175-0

## DEFENDANT IDENTIFICATION INFORMATION

| LiveScan Tracking Number | | Social Security Number | | SID (State Identification Number) | | FBI Number | |
|---|---|---|---|---|---|---|---|
| Age 35 | Race White | Ethnicity Unknown | Gender Male | Eye Color Unknown | Hair Color Unknown or Completely Bald | Date of Birth 07/04/1989 | Weight (lbs) | Height(Ft/In) |

| NCIC Extradition Code / Description: | Felony - Full Extradition Unless Otherwise Noted |
|---|---|
| Distance: | |
| Comments: | |

| Alias | Participant Local No |
|---|---|

Prosecution
Commonwealth of Pennsylvania

Distinguishing Features/Special Considerations

## DEFENDANT LICENSE / VEHICLE INFORMATION

| License Number 489074360 | | | | State NY | | Expiration Date | | |
|---|---|---|---|---|---|---|---|---|
| Plate Number | State | Hazmat | Registration Sticker (MM/YYYY) | | Comm'l Veh. Ind. | School Veh. | Oth. Veh. Cd | |

## DEFENDANT CONTACT INFORMATION

**DEFENDANT ADDRESS**
**Home  (Case Address)**
41 Powder Horn Dr
Suffern, NY  10901

**FREE INTERPRETER**
www.pacourts.us/language-rights
412-350-5419

**File Copy**

Commonwealth of Pennsylvania
v.
Moshe Silber

**Warrant Control No: 05214-AW-0000044-2025**
Docket No: MJ-05214-CR-0000079-2025
OTN: R 896175-0

| | **All Charge(s)** |
|---|---|
| 18 § 3921§§ A (Lead) | THEFT BY UNLAWFUL TAKING |
| 18 § 3925 §§ A | RECEIVING STOLEN PROPERTY |
| 18 § 5111§§ A1 | DEALING IN THE PROCEEDS OF ILLEGAL ACTIVITY |
| 18 § 903 | Conspiracy - Theft By Unlaw Taking-Movable Prop |
| 18 § 3302 §§ B | CAUSING OR RISKING CATASTROPHE |
| 18 § 3927 §§ A | THEFT BY FAILURE TO MAKE REQUIRED DISPOSITION OF F |
| 18 § 6504 | MAKING A PUBLIC NUISANCE |

**FREE INTERPRETER**
www.pacourts.us/language-rights
412-350-5419

| COMMONWEALTH OF PENNSYLVANIA<br>COUNTY OF: ALLEGHENY | | **POLICE CRIMINAL COMPLAINT**<br>COMMONWEALTH OF PENNSYLVANIA<br>VS. | |
|---|---|---|---|

MDJ: Hon. RICHARD D OLASZ, JR.
Magisterial District Number: 05-2-14
Address: 2629 SKYLINE DRIVE
        WEST MIFFLIN, PA 15122

Phone: 412.466.1503

DEFENDANT:

*(NAME and ADDRESS):*

| MOSHE | | SILBER | |
|---|---|---|---|
| First Name | Middle Name | Last Name | Gen. |

41 POWDER HORN DRIVE SUFFERN, NY 10901

**NCIC Extradition Code Type**

Felony - Full Extradition
Distance: _____

**DEFENDANT IDENTIFICATION INFORMATION**

| Docket Number<br>CR-935 | Date Filed<br>2-4-25 | OTN/LiveScan Number<br>R 896175-0 | Complaint/Incident Number<br>ASAP-1028865/I-247-2024 | Request Lab Services?<br>☐ Yes |
|---|---|---|---|---|
| GENDER MALE | DOB 07/04/1989 | POB | Add'l DOB | Co-Defendant(s) ☒ |

| RACE WHITE | First Name | Middle Name | Last Name | Gen. |
|---|---|---|---|---|
| ETHNICITY | AKA | | | |

| HAIR COLOR | | EYE COLOR | |
|---|---|---|---|

| | | | | WEIGHT (lbs.) |
|---|---|---|---|---|
| DNA | | DNA Location | | |
| FBI Number | | | MNU Number | Ft. HEIGHT In. |
| Defendant Fingerprinted | | | | |
| Fingerprint Classification | | | | |

**DEFENDANT VEHICLE INFORMATION**

| Plate # | State | Hazmat | Registration<br>Sticker (MM/YY) | Comm'l<br>Veh. Ind. | School<br>Veh. | Oth. NCIC Veh. Code | Reg.<br>Same<br>as Def. |
|---|---|---|---|---|---|---|---|
| VIN | | Year | Make | Model | Style | Color | ☐ |

Office of the attorney for the Commonwealth ☐ Approved ☐ Disapproved because: _____

_____

(The attorney for the Commonwealth may require that the complaint, arrest warrant affidavit, or both be approved by the attorney for the Commonwealth prior to filing. See Pa.R.Crim.P. 507).

| _____ | _____ | _____ |
|---|---|---|
| (name of the attorney for the Commonwealth) | (Signature of the attorney for the Commonwealth) | (Date) |

I, RONALD FREEMAN        35080
(Name of the Affiant)      (PSP/MPOETC –Assigned Affiant ID Number & Badge #

of DISTRICT ATTORNEYS DETECTIVES      PA002013A
(Identify Department or Agency Represented and Political Subdivision)     (Police Agency ORI Number)

do hereby state: (check appropriate box)

1. x  I accuse the above named defendant who lives at the address set forth above

    I accuse the defendant whose name is unknown to me but who is described as _____

    _____

    I accuse the defendant whose name and popular designation or nickname are unknown to me and whom I have,
    therefore, designated as John Doe or Jane Doe

    with violating the penal laws of the Commonwealth of Pennsylvania at      473        WEST MIFFLIN BORO
                                      (Subdivision Code)    (Place-Political Subdivision)

    In Allegheny County       02        on or about  03/01/2023    0:01
                      (County Code)

# POLICE CRIMINAL COMPLAINT

| Docket Number: CR. 79·25 | Date Filed: | OTN/LiveScan Number R 896175-0 | Complaint/Incident Number ASAP-1028865/I-247-2024 |
|---|---|---|---|
| Defendant Name | First: MOSHE | Middle: | Last: SILBER |

The acts committed by the accused are described below with each Act of Assembly or statute allegedly violated, if appropriate. When there is more than one offense, each offense should be numbered chronologically.
(Set forth a *brief* summary of the facts sufficient to advise the defendant of the nature of the offense(s) charged. A citation to the statute(s) allegedly violated, without more, is not sufficient. In a summary case, you must cite the specific section(s) and subsection(s) of the statute(s) or ordinance(s) allegedly violated. In addition, social security numbers and financial information (e.g. PINS) should not be listed. If the identity of an account must be established, list only the last four digits. 204 PA.Code §§213.1 – 213.7.)

| Inchoate Offense | ☐ Attempt 18 901 A | | ☐ Solicitation 18 902 A | | ☐ Conspiracy 18 903 | | | |
|---|---|---|---|---|---|---|---|---|
| **X** | 1 | 3921 | A | of the | 18 | 1 | F1 | |
| Lead? | Offense# | Section | Subsection | | PA Statute (Title) | Counts | Grade | NCIC Offense Code · UCR/NIBRS Code |

| PennDOT Data (if applicable) | Accident Number | _____ | ☐ Safety Zone | ☐ Work Zone |
|---|---|---|---|---|

Statute Description/Acts of the accused associated with this Offense:

18 3921A THEFT BY UNLAWFUL TAKING F1    1 COUNT
   The actor unlawfully took, or exercised unlawful control over movable property, namely $580,039.29, with a total value greater than or equal to $500,000 from Mon View Heights Residents, with the intent to deprive the owner thereof, in violation of 18 Pa. C.S. §3921(a).

| Inchoate Offense | ☐ Attempt 18 901 A | | ☐ Solicitation 18 902 A | | ☐ Conspiracy 18 903 | | | |
|---|---|---|---|---|---|---|---|---|
| | 2 | 3925 | A | of the | 18 | 1 | F1 | |
| Lead? | Offense# | Section | Subsection | | PA Statute (Title) | Counts | Grade | NCIC Offense Code · UCR/NIBRS Code |

| PennDOT Data (if applicable) | Accident Number | _____ | ☐ Safety Zone | ☐ Work Zone |
|---|---|---|---|---|

Statute Description/Acts of the accused associated with this Offense:

18 3925A RECEIVING STOLEN PROPERTY F1    1 COUNT
   The actor intentionally received, retained, or disposed of movable property, namely $580,039.29, belonging to Mon View Heights Residents, with a total value greater than or equal to $500,000, knowing that had been stolen, or believing that it had probably been stolen and without intent to restore it to the owner thereof, in violation of 18 Pa. C.S. §§ 3925(a) and 3903 (a.2).

# POLICE CRIMINAL COMPLAINT

| Docket Number: CR-79-25 | Date Filed: | OTN/LiveScan Number R 896175-0 | Complaint/Incident Number ASAP-1028865/I-247-2024 |
|---|---|---|---|

| Defendant Name | First: MOSHE | Middle: | Last: SILBER |
|---|---|---|---|

| Inchoate Offense | ☐ Attempt 18 901 A | ☐ Solicitation 18 902 A | ☐ Conspiracy 18 903 |
|---|---|---|---|

| Lead? | Offense# | Section | Subsection | of the | PA Statute (Title) | Counts | Grade | NCIC Offense Code | UCR/NIBRS Code |
|---|---|---|---|---|---|---|---|---|---|
| | 3 | 5111 | A1 | | 18 | 1 | F1 | | |

| PennDOT Data (if applicable) | Accident Number | | ☐ Safety Zone | ☐ Work Zone |
|---|---|---|---|---|

Statute Description/Acts of the accused associated with this Offense:

18 5111A1 DEALING IN THE PROCEEDS OF ILLEGAL ACTIVITY F1    1 COUNT
    The actor, knowing that the property involved in a financial transaction represented the proceeds of an unlawful activity, conducted a financial transaction which involved the proceeds of the unlawful activity, namely diverted funds from the Mon View Apts LLC Flagstar Bank account into other bank accounts which were used not for the benefit of the residents of Mon View Heights with intent to promote the carrying on of the unlawful activity and/or knowing that the transaction was designed in whole or in part to conceal or disguise nature, location, source, ownership or control of the proceeds of unlawful activity and/or to avoid a transaction reporting requirement under State or Federal law, in violation of 18 Pa. C.S. §5111(a)(1) or (2) or (3).

| Inchoate Offense | ☐ Attempt 18 901 A | ☐ Solicitation 18 902 A | ☒ Conspiracy 18 903 |
|---|---|---|---|

| Lead? | Offense# | Section | Subsection | of the | PA Statute (Title) | Counts | Grade | NCIC Offense Code | UCR/NIBRS Code |
|---|---|---|---|---|---|---|---|---|---|
| | 4 | REQUIRED | A | | 18 | 1 | F1 | | |

| PennDOT Data (if applicable) | Accident Number | | ☐ Safety Zone | ☐ Work Zone |
|---|---|---|---|---|

Statute Description/Acts of the accused associated with this Offense:

18 903A1 CRIMINAL CONSPIRACY F1    1 COUNT
    The actor, with the intent of promoting or facilitating the crime of 18:3927 | THEFT BY FAILURE TO MAKE REQUIRED DISPOSITION OF FUNDS  RECEIVED:A conspired and agreed with Jonathan Liani and Frederick Schulman that they or one or more of them would engage in conduct constituting such crime or an attempt or solicitation to commit such crime, and in furtherance thereof did commit an overt act in violation of 18 Pa. C.S. §903 (a)(1).

# POLICE CRIMINAL COMPLAINT

| Docket Number: CR-79-25 | Date Filed: | OTN/LiveScan Number R 896175-0 | | Complaint/Incident Number ASAP-1028865/I-247-2024 |
|---|---|---|---|---|
| Defendant Name | First: MOSHE | | Middle: | Last: SILBER |

---

| Inchoate Offense | ☐ Attempt 18 901 A | | ☐ Solicitation 18 902 A | | ☐ Conspiracy 18 903 | |
|---|---|---|---|---|---|---|

| Lead? | Offense# | Section | Subsection | of the | PA Statute (Title) | Counts | Grade | NCIC Offense Code | UCR/NIBRS Code |
|---|---|---|---|---|---|---|---|---|---|
| | 5 | 3302 | B | of the | 18 | 1 | F3 | | |

| PennDOT Data (if applicable) | Accident Number | | ☐ Safety Zone | ☐ Work Zone |
|---|---|---|---|---|

Statute Description/Acts of the accused associated with this Offense:

**18 3302B CAUSING OR RISKING CATASTROPHE F3   1 COUNT**

The actor recklessly created a risk of catastrophe in the employment of its total disregard in failing to remediate the numerous documented health and safety hazards which continuously place the property, and all residents living in the Monview Apartment complex at great risk of injury or death, including but not limited to, fire hazard, exposure to the elements, the flow of raw sewage onto the parking lot and road within the complex. Lack of security and or proper lighting and the proper maintaining of apartments located on the property., in violation of 18 Pa. C.S. §3302(b).

---

| Inchoate Offense | ☐ Attempt 18 901 A | | ☐ Solicitation 18 902 A | | ☐ Conspiracy 18 903 | |
|---|---|---|---|---|---|---|

| Lead? | Offense# | Section | Subsection | of the | PA Statute (Title) | Counts | Grade | NCIC Offense Code | UCR/NIBRS Code |
|---|---|---|---|---|---|---|---|---|---|
| | 6 | 3927 | A | of the | 18 | 1 | F3 | | |

| PennDOT Data (if applicable) | Accident Number | | ☐ Safety Zone | ☐ Work Zone |
|---|---|---|---|---|

Statute Description/Acts of the accused associated with this Offense:

**18 3927A THEFT BY FAILURE TO MAKE REQUIRED DISPOSITION OF FUNDS RECEIVED F3   1 COUNT**

The actor obtained property, namely $580,039.29 belonging to Mon View Heights Residents upon an agreement, or subject to a known legal obligation, to make specified payments or other disposition, whether from such property or its proceeds or from the actor's own property to be reserved in equivalent amount and intentionally dealt with the property obtained as the actor's own and failed to make the required payment or disposition, in violation of 18 Pa.C.S.§3927(a).

---

# POLICE CRIMINAL COMPLAINT

| Docket Number: CR. 99.25 | Date Filed: | OTN/LiveScan Number R 896175-0 | | Complaint/Incident Number ASAP-1028865/I-247-2024 |
|---|---|---|---|---|
| Defendant Name | First: MOSHE | | Middle: | Last: SILBER |

| Inchoate Offense | ☐ Attempt 18 901 A | | ☐ Solicitation 18 902 A | | ☐ Conspiracy 18 903 |
|---|---|---|---|---|---|

| 7 | 6504 | | of the | 18 | 1 | M2 | | |
|---|---|---|---|---|---|---|---|---|
| Lead? | Offense# | Section | Subsection | PA Statute (Title) | Counts | Grade | NCIC Offense Code | UCR/NIBRS Code |

| PennDOT Data (if applicable) | Accident Number | | ☐ Safety Zone | ☐ Work Zone |
|---|---|---|---|---|

Statute Description/Acts of the accused associated with this Offense:

18 6504 MAKING A PUBLIC NUISANCE M2    1 COUNT
    The actor erected, set up, established, maintained, kept or continued or caused to be erected, set up established, maintained, kept or continued, a public or common nuisance, namely its total disregard in failing to remediate the numerous documented health and safety hazards which continuously place the property, and all residents living in the Monview Apartment complex at great risk of injury or death, including but not limited to, fire hazard, exposure to the elements, the flow of raw sewage onto the parking lot and road within the complex. Lack of security and or proper lighting and the proper maintaining of apartments located on the property., in violation of 18 Pa. C.S. §6504.

# POLICE CRIMINAL COMPLAINT

| Docket Number: CR.79.25 | Date Filed: | OTN/LiveScan Number R 896175-0 | | Complaint/Incident Number ASAP-1028865/I-247-2024 |
|---|---|---|---|---|
| Defendant Name | First: MOSHE | Middle: | | Last: SILBER |

2. I ask that a warrant of arrest or a summons be issued and that the defendant be required to answer the charges I have made.

3. I verify that the facts set forth in this complaint are true and correct to the best of my knowledge or information and belief. This verification is made subject to the penalties of Section 4904 of the Crimes Code (18 PA.C.S.§4904) relating to unsworn falsification to authorities.

4. This complaint is comprised of the preceding page(s) numbered        through

5. I certify that this filing complies with the provisions of the Case Records Public Access Policy of the Unified Judicial System of Pennsylvania that require filing confidential information and documents differently than nonconfidential information and documents.

The acts committed by the accused, as listed and hereafter, were against the peace and dignity of the Commonwealth of Pennsylvania and were contrary to the Act(s) of the Assembly, or in violation of the statutes cited.
**(Before a warrant of arrest can be issued, an affidavit of probable cause must be completed, sworn to before the issuing authority, and attached.)**

_____          02/04/2025          /RONALD FREEMAN/
                                                      (Signature of Affiant)
                                 (Date)

AND NOW, on this date     2/4/2025     I certify that the complaint has been properly completed and verified.

An affidavit of probable cause must be completed before a warrant can be issued.

_____05-2-14_____          _____          ┌──────────┐
(Magisterial District Court Number)     (Issuing Authority)          │   SEAL   │
                                                                     └──────────┘

POLICE CRIMINAL COMPLAINT

| Docket Number: CR-79-25 | Date Filed: | OTN/LiveScan Number R 896175-0 | Complaint/Incident Number ASAP-1028865/I-247-2024 |
|---|---|---|---|
| Defendant Name | First: MOSHE | Middle: | Last: SILBER |

## AFFIDAVIT of PROBABLE CAUSE

1. **WHEN:**

   a) Date when Affiant received information:

   9/30/2024

   b) Date when the source of information (Police Officers, Informant, Victim, Co-Defendant, Defendant, etc.) received information:

   10/16/2024

2. **HOW:**

   a) How Affiant knows this particular person commited crime: (personal observation, defendant's admissions, etc.):

   Information received from West Mifflin Police Chief Gregory McCulloch, Homeville VFC Chief Ronald Lowe and personal observations

   b) How the source of information knows this particular person committed the crime:

   Inspections by Code Enforcement Officers, Fire Chief Ronald Lowe and West Mifflin Police Officers observations

   c) How both Affiant and/or source of information knows that a particular crime has been commited:

   Information received from West Mifflin Police Chief Gregory McCulloch, Fire Chief Lowe, and personal observations

3. **WHAT CRIMES:**

   18 6504  MAKING A PUBLIC NUISANCE
   18 3302 B CAUSING OR RISKING CATASTROPHE
   18 3921 A THEFT BY UNLAWFUL TAKING
   18 3927 A THEFT BY FAILURE TO MAKE REQUIRED DISPOSITION OF FUNDS  RECEIVED
   18 903 A1 CRIMINAL CONSPIRACY
   18 3925 A RECEIVING STOLEN PROPERTY
   18 5111 A1 DEALING IN THE PROCEEDS OF ILLEGAL ACTIVITY

4. **WHERE CRIME(S) COMMITTED:**

   MONVIEW HEIGHTS APARTMENT COMPLEX

5. **WHY AFFIANT BELIEVES THE SOURCE OF INFORMATION:**

   X    Source is presumed reliable, i.e. other Police Officer, Eyewitness, Victim of Crime, etc.

        Source has given information in the past which has led to arrest and/or conviction

        Defendant's reputation for criminal activity

        This source made declaration against his/her penal interest to the above offense

   X    Affiant and/or other Police Officers corroborated details of the information

Page 1 of 14

## POLICE CRIMINAL COMPLAINT

| Docket Number: CR·79·25 | Date Filed: | OTN/LiveScan Number R 896175-0 | | Complaint/Incident Number ASAP-1028865/I-247-2024 |
|---|---|---|---|---|
| Defendant Name | First: MOSHE | Middle: | | Last: SILBER |

I, Detective Ronald Freeman, your Affiant, am currently employed with the Allegheny County District Attorney's Office since September of 2022. I am a retired City of Pittsburgh Police Officer having served for 17 years as a Patrolman and a Detective.

On Monday September 23, 2024, your Affiant was assigned to assist the West Mifflin Police Department with their investigation of the Monview Heights apartment complex located at 1 Midway Drive in West Mifflin, PA. West Mifflin Police Chief Gregory McCulloch has received numerous complaints regarding the living conditions in this apartment complex. These complaints range from large potholes in the street, boarded-up windows, scattered trash and open sewage spilling onto the street next to a PRT bus stop.

On Tuesday September 24, 2024, your Affiant met with Allegheny County District Attorney Assistant Chief McDonald, ADA McCarthy, West Mifflin Police Chief McCulloch and Lieutenant Brett Basic at the Monview Heights complex. Complex conditions included scattered rubbish, boarded-up windows, large potholes in the street and sewage on the street next to a PRT bus stop. This open sewage on the street contained feces, urine and toilet paper. This sewage could be smelled from a substantial distance away from the source. We observed an unidentified adult female who was waiting for a bus just feet from the sewage deposit. This apartment complex has resident children who play in the area in and around that contains open sewage.

A meeting was scheduled with Winn Residential Property Management personnel at 1000 hours at the Mon view Heights Office building. Property Manager Ronda Wyno and Regional Vice President Maureen Cassley attended the meeting. Cassley was asked about the sewage leak, the dumpsters and necessary repairs to the units. She explained that the sewer issue had been remediated by snaking the line. She did not explain that there would be any further repairs to the broken sewer line. She also stated that they obtained a new garbage removal service that had just emptied the dumpsters. She said that since the management company had taken over the property on August 01, 2024, They had discovered numerous unpaid bills from vendors and that she had insufficient funds to address the various housing unit deficiencies. She explained that they receive all rents from tenants in the management office and will also receive all federal subtilities once those payments begin. They have yet to receive a federal subsidy payment since they took over the management of the property.

On September 26, 2024 representatives from the District Attorney's Office went to the Mon View Heights apartment complex and took photographs and videos of the current condition at that location. Your Affiant can verify from first-hand knowledge that those photographs and videos accurately represent the current condition of Mon View Heights.

The following information was provided to your Affiant by Code Enforcement Officer Jeffrey Youkers:

Mon View Heights was sold AS-IS to Mon View Apts LLC. An Initial Occupancy Inspection was done on January 23, 2023 by Youkers with a representative from AHRCO- Monview Heights (Previous Owner). The Inspection failed and the CEO Youkers discussed the results with the representative. A signed AS-IS Sale Letter was issued, signed, and returned to the Code Enforcement office. The Letter included a list of all items that would need to be corrected and listed items which the buyers would need to correct within 180 days of closing.

On August 24, 2023, Youkers issued a Notice of Violation for the Fire Hydrant located at the entrance to the property being out of service. On September 15, 2023, Youkers spoke with Ralph Moller (Property Manager) about setting up occupancy inspections for all 326 units as well as the Fire Hydrant which was out of service would be repaired. Over the next couple of months, Youkers spoke with Ralph a few times and he always stated they are working on the issues.

On January 25, 2024, Youkers issued a Notice of Violation to Mon View Heights LLC for both the failure to get occupancy inspections and for failure to maintain their private fire hydrants. On February 29, 2024, Youkers issued a Criminal Complaint to the

**POLICE CRIMINAL COMPLAINT**

| Docket Number: CR-79-25 | Date Filed: | OTN/LiveScan Number R 896175-0 | | Complaint/Incident Number ASAP-1028865/I-247-2024 |
|---|---|---|---|---|
| Defendant Name | First: MOSHE | Middle: | | Last: SILBER |

magistrate's office for both violations. A Summary Trial Notice for both violations was sent certified mail to all parties with a trial date of April 17, 2024 at l0am. Thereafter, a representative from NB Affordable Housing contacted Youkers by phone and email on April 11, 2024 to discuss what needed to be done to correct the violations. Youkers explained to them that they need to get Occupancy for all 326 units and get the fire hydrant in service and flow tested. Occupancy inspections were scheduled for May 15, 2024. On April 17, 2024, Youkers requested a 90-day extension on the Occupancy Violation and 30 Days on the Fire Hydrant Violation from the court. Youkers emailed NB Affordable representatives as well as the then current, Property Manager Jennifer Castilow to inform them of the new court dates and his expectations of progress.

On April 18, 2024, MB Affordable representatives emailed Youkers to acknowledge his email. On May 15, 2024, Castilow requested to reschedule the occupancy inspections to June 19, 2024.

On May 22, 2024 Youkers requested from the court another 60-day extension for the fire hydrant issue.

The first occupancy inspections were completed at the 20 Row with Castilow on June 25, 2024. In the 20 Row, 11 out of 16 units inspected failed with issues like open framing, holes in floors, soft floors, smoke detectors and broken windows. On June 26, 2024, Youkers inspected the 19 and 21 Rows with Castilow. Out of the 20 units inspected, 13 units failed with the same issues as the previous 20 Row. Inspections continued July 1, 2024 on the 22, 23, and 24 Rows with Castilow. Out of the 15 units inspections, 9 units failed. The 22 Row was found to have sewage leaking from the ground and running through parking lot, Castilow told Youkers that a plumber was going to snake the sewer in an effort to make the repair.

On July 2, 2024, Youkers inspected 25, 26, and 27 Rows with Castilow. 13 units were inspected with 7 failing. A sewage leak was also coming from the ground at Row 26. On July 3, 2024, Youkers inspected the 28, 29, and 30 Rows with Castilow and out of 16 units, 12 failed. In unit 29F, Youkers found the unit full of gnats. On July 9, 2024, Youkers completed the inspections of the 31 Row with a property maintenance employee. All 12 units failed. On July 10, 2024, Youkers completed inspections of the 32 Row with the maintenance employee and 14 out of 15 Inspections failed. The 32A unit was completely unlivable as it was full of junk, mold, the ceiling had collapsed in and the unit was full of bugs. That evening, Youkers received an email from NB Affordable representatives that Castilow was no longer with the company and the new contact became Zehava Allen. On July 15, 2024, inspections continued on the 33, 34 and 35 Rows and 7 out of 8 inspections failed. On July 17, 2024, Youkers inspected the 36, 37, & 38 Rows and all 14 inspections failed.

Youkers attempted to continue inspections on July 23, 2024 but was advised that no property personnel were available to accompany him. He attempted to continue again the week of July 29, 2024 but the Management Office was closed. Youkers sent Allen and NB Affordable representatives an email on July 31, 2024 asking if they intended to continue the required inspections and reminded them of the upcoming court dates. He told representatives that all initial inspections needed to be completed before the court date. Youker received a response that the property was installing a new property management company and that they would have the new management contact him, however, Youker stated that he was never contacted by them.

On August 21, 2024, both the Fire Hydrant and the Occupancy trials took place at the West Mifflin magistrate's office, no property representative appeared and the property was fined $180,000 for each violation. Youkers reported that the new fire hydrant was installed but was not flow tested and therefore, is still in violation of the Borough Code Chapter.

On August 23, 2024, Youkers issued two additional Notice of Violations, one for property maintenance and one for dangerous structure for the 41 building being abandoned and dangerous. No corrections were made for those additional violations and thereafter, on September 12, 2024, Youkers issued a Criminal Citation for both violations. Youkers reported that he drives through the property daily and the property continues to become more and more deplorable. The property is not being maintained and has become an eyesore for the community.

**Page 3 of 14**

## POLICE CRIMINAL COMPLAINT

| Docket Number: CR79.25 | Date Filed: | OTN/LiveScan Number R 896175-0 | Complaint/Incident Number ASAP-1028865/I-247-2024 |
|---|---|---|---|
| Defendant Name | First: MOSHE | Middle: | Last: SILBER |

To recap, Youkers stated that he did inspections on 129 units and 96 of them failed. There are multiple units with missing windows, broken windows, and boarded up windows. Units had open framing, plumbing issues (No Hot water, Continuous running showers, leaking pipes) and mold. The tenants continuously asked for items to be repaired without remedy. There are still trees down on the property from high windstorms which hit the area on June 26, 2024 and there are abandoned vehicles sitting on the property. Youkers believed that the current situation of the property is that it has become an eyesore, a nuisance and is dangerous and unsafe to the tenants and the public alike. Youkers provided your Affiant with copies of all issued notices, pictures, and Inspection Reports for this property since Mon View Apts LLC has taken over ownership.

In addition, West Mifflin Police Lieutenant Brett Basic provided the following information regarding Mon View Heights:

The West Mifflin Police Department (WMPD) has responded to five hundred and two (502) calls for service in the Mon View Heights housing complex during the past six months (March 24, 2024- September 24, 2024). The calls for service have included:

31 Domestics,
49 Disturbances,
12 Shots Fired calls,
18 Suspicious Activity / Persons,
18 Unknown Trouble /911 Hang Ups /911 Miscellaneous calls,
11 Ordinance Violations,
16 PFA Services I Violations,
10 Warrant Services,
5 Child Abuse cases,
5 Burglary reports,
1 Sexual Assault,
8 Trespass calls,
24 Welfare Checks,
11 Harassment calls,
3 Weapon Threats or Seen calls,
3 Assaults, and
10 Natural Gas Smell/ Leak calls.

As a result of these calls for service, there have been at least 62 arrests or warrants issued during this same time frame. The arrests include charges for Possession of Drugs, Drug Paraphernalia, Aggravated Assault, Simple Assault, Sexual Assault, Firearms Violations, Burglary, Megan's Law Violation, Endangering the Welfare of Children, Strangulation, Disorderly Conduct, Trespass, DUI, Resisting Arrest, Harassment, Criminal Mischief, Evading Misdemeanor or Felony Arrest or Detention on Foot, Invasion of Privacy, False ID, and Public Drunkenness.

The previous Mon View Heights owners employed a certified armed security company to control the front entrance gate on Midway Drive as well as to patrol the property. The company worked closely with the WMPD to respond to incidents on the property. In late October of 2023, the WMPD was advised by the security company that they were owed more than $55,000 from the owners for services rendered. The security company subsequently ceased operations at the complex. Since that time, there have been at least 3 different security companies that have come and gone from providing services at Mon View Heights. On June 11, 2024, the WMPD was notified by Mon View Heights management that as of June 12, 2024 they could no longer afford to have on site security.

**Page 4 of 14**

POLICE CRIMINAL COMPLAINT

| Docket Number: CR-79-25 | Date Filed: | OTN/LiveScan Number R 896175-0 | | Complaint/Incident Number ASAP-1028865/I-247-2024 |
|---|---|---|---|---|
| Defendant Name | First: MOSHE | | Middle: | Last: SILBER |

On June 25, 2024, a WMPD officer advised the department that Pai American Security was on site as a new security company and a guard was stationed at the front entrance gate booth. On a date after that, security services again were non-existent at the property.

On September 9, 2024, WMPD Detective Whitney reported a hazardous public health condition to the Allegheny County Health Department. The condition was discovered in the 22 Row parking lot and consisted of raw sewage leaking out of the 22 Row building into the parking lot. There is toilet paper, human feces, and feminine hygiene products visible in the parking lot because of the leak. Several residents advised that the condition has been present for quite some time. A WMPD incident report was completed and Mon View Heights management was also advised of the condition.

On Wednesday October 9, 2024, your Affiant traveled to the Allegheny County Health Department Office located at 3190 Sassafras Way in the City of Pittsburgh. Program Manager Tim Murphy provided documentation of the office's investigations files of complaints of the living conditions of numerous Mon View Heights residents.

Murphy provided 2 boxes filled with closed out investigative case files of complaints lodged by numerous Mon View Heights residents. He also provided 13 open investigation case files of complaints lodged by Mon View Heights residents. These complaints include, but are not limited to, rodent and insect infestations, broken bathroom tubs and toilets, holes in the ceiling and walls, lack of hot water and broken stairs.

Your Affiant created a spreadsheet of all open case files detailing the location, complaint number, complaint date, violation and due date for the ownership to correct the violation.

On October 10, 2024 your Affiant spoke with West Mifflin Borough Manager, Brian Kamauf to inquire about who was responsible for the maintenance, testing and upkeep of all fire hydrants inside the Mon View Apartment Complex. Kamauf stated that the ownership of the complex has the responsibility for all fire hydrants on their property. He told me that the Mon View Heights Complex is private property and not the responsibility of West Mifflin Borough.

Kamauf provided information regarding the West Mifflin Boroughs designated contact with PA American Water, Brent Robinson. Your Affiant contacted Robinson who stated that his company is not responsible for the maintenance, testing or upkeep of any of the fire hydrants on the Mon View Heights Property. He explained that PA American Water is only responsible for the "Master Meter." Robinson stated that all the billing with the owners of Mon View Heights is done paperless and provided the email (uem@entrata.com) for the property.

Your Affiant learned that on October 11, 2024 at approximately 1252 hours, West Mifflin Police Officer Hindman responded to 31B Midway Drive for a 3-year-old female child who fell through a hole in the kitchen floor. Officer Hindman arrived on scene and was met by Shaquan Sanford, the mother of 3-year-old Seleste Butler-Sanford. Sanford told Officer Hindman that she and Seleste were both in the kitchen when the floor collapsed under Seleste's feet. This caused one of the child's legs to fall through the floor.

Officer Hindman observed an approximate two-foot-long hole in the kitchen floor that may have been caused by rotting wood. The entire event was captured on Officer Hindman's body worn camera.

The following information was provided to your Affiant by Homeville Fire Chief, Ronald Lowe:

Mon View Heights Apartments faces significant safety concerns that could jeopardize the well-being of its residents, particularly regarding fire safety. One critical issue is the low water pressure in the plan, which has been reported to be inadequate for effective fire suppression. Firefighters rely on sufficient water pressure to combat flames swiftly and efficiently. In emergencies, low water

**Page 5 of 14**

**POLICE CRIMINAL COMPLAINT**

| Docket Number:<br>CR. 79-25 | Date Filed: | OTN/LiveScan Number<br>R 896175-0 | | Complaint/Incident Number<br>ASAP-1028865/I-247-2024 |
|---|---|---|---|---|
| Defendant Name | First:<br>MOSHE | | Middle: | Last:<br>SILBER |

pressure can lead to delays in extinguishing fires, potentially endangering lives and property. This situation underscores the necessity for immediate assessment and improvement of the water supply infrastructure to ensure that it meets the required standards for fire safety.

A particularly alarming concern is the failure to repair the fire safety equipment, notably the fire hydrant located near the entrance to the apartment complex. A non-functional hydrant significantly undermines the fire department's ability to respond effectively in case of an emergency. This negligence not only places residents at risk but also reflects a broader lack of commitment to maintaining essential safety infrastructure. Prompt repairs and maintenance of fire safety equipment are critical to ensuring that residents feel secure in their homes. Addressing these concerns through proactive measures and investment in safety will help foster a safer living environment at Mon View Heights Apartments. At the time of this document, the fire hydrant mentioned has been out of service for over one year and is the primary water source for the first section of the apartment plan.

The living conditions inside Mon view Heights Apartments are troubling, characterized by issues such as mold growth, damaged interior, and overall deterioration. Mold not only poses health risks, particularly for residents with allergies or respiratory issues, but it also indicates underlying moisture problems that require immediate attention. Additionally, many units exhibit significant wear and tear, including cracked and peeling paint, water stains, and structural damage to walls that compromise both aesthetics and safety. These conditions contribute to an uncomfortable and potentially hazardous living environment, raising concerns about the management's commitment to maintaining the property and ensuring the well-being of its residents. Addressing these issues is crucial for providing a safe and healthy home for all occupants.

During 2024, station 293 responded to 63 incidents at Mon View Heights. Ranging from structure fires, structural collapse, natural gas leaks, and carbon monoxide alarms.

On Thursday October 17, 2024 your Affiant spoke with Allegheny County Health Department Program Manager, Tim Murphy in regards to their complaint process and enforcement of violations. Murphy explained that once the Health Department receives a complaint it's immediately classified as "emergency or non-emergency." In the event of an emergency, immediate action is taken to contact the landlord or ownership of the property and request it be fixed. In the event of a non-emergency, a letter is sent to the property management agency and to the ownership of the property, detailing the tenant complaint and demands the deficiency is corrected within 30 days.

In the event that any written correspondence is ignored, and the deficiency goes unaddressed, a civil penalty is issued. The civil financial penalty is decided on an internal matrix system. The penalized party is notified in writing that they have 30 days to appeal. If the defending party fails to appeal, or pay the penalty, the issue is directed to the Health Department Legal Office.

On Thursday October 17, 2024, your Affiant spoke with John Cronin, an attorney with the Allegheny County Health Department. Cronin told me that his office currently has 5 judgements filed against Mon View Apts LLC in the Allegheny County Court of Common Pleas. Furthermore, Cronin stated that several more judgements against Mon View Apts LLC are forthcoming.

Detective Jackelyn Weibel of the Allegheny County District Attorney's Office reviewed records from the Allegheny County Real Estate website that showed that ownership of Mon View Heights changed on February 23, 2023 from a local business known as Allegheny Housing Rehabilitation Corporation (AHRCO) to Mon View Apts LLC. On this same date, AHRCO sold at least 12 properties to this same ownership group (each property had its own LLC formed) on this same date.

Documents obtained from HUD showed that the HAP contract for Mon View Heights was assumed by Mon View Apts LLC on February 23, 2023 and signed by ownership representative Frederick Schulman.

POLICE CRIMINAL COMPLAINT

| Docket Number: CR. 79. 25 | Date Filed: | OTN/LiveScan Number R 896175-0 | | Complaint/Incident Number ASAP-1028865/I-247-2024 |
|---|---|---|---|---|
| Defendant Name | First: MOSHE | | Middle: | Last: SILBER |

Detective Weibel reviewed the language of the HUD HAP contract which was agreed to by Mon View Apts LLC. The contracts states that each month, the owner shall make a request for a specific amount of government subsidy based upon occupancy and residents need. Additionally, on this request and in order to receive the month subsidy, the owner must certify that to the best of their knowledge and belief the dwelling units are in decent, safe and sanitary condition.

The last HUD REAC inspection at Mon View Heights was on November 27, 2023 and received a score of 81. This inspection also detailed numerous exigent health and safety issues as well as life threatening safety issues which had to be corrected in a short period of time.

On or about September 30, 2024, your Affiant filed 1 misdemeanor criminal charge of Public Nuisance against Mon View Apts LLC. On or about October 21, 2024, your Affiant filed 1 felony criminal charge for Causing or Risking a Catastrophe against Mon View Apts LLC.

Violation notices from both the West Mifflin Borough Magistrate's office regarding charges filed by the West Mifflin Code Enforcement Officer as well as notices regarding both sets of criminal charges filed by the District Attorney's Office against the Mon View Heights property were all mailed from the Magistrate's office to Mon View Apts LLC at 46 Main Street, Suite 339, Monsey, NY 10953.

Based upon the failed code inspections, lack of occupancy permits, the HUD REAC inspection and charges filed by both West Mifflin Borough and the Allegheny County District Attorney's Office, the ownership of Mon View Heights knew or should have known that the units were not in decent, safe and sanitary condition.

Detective Weibel obtained copies of the Mon View Heights bank account held at Flagstar Bank from December 1, 2022 through September 30, 2024 via a valid search warrant. The mailing address for the account was 46 Main Street, Suite 339, Monsey, NY 10953.

A review of the account application shows that the account was owned by an LLC known as Mon View Apts LLC which was formed in Delaware on April 21, 2022. The three owners of the LLC are as follows:

Moshe "Mark" Silber
41 Powder Horn Drive
Suffern NY 10901
DOB 07/04/1989    SSN -0231
NYDL #489074360

Jonathan Liani
1 Fleetwood Avenue
Spring Valley, NY 10577
DOB 12/25/1985    SNN -9452
NYDL #786743759

Frederick Schulman
75 Long Hill Road E
Briarcliff Manor, NY 10510
DOB 06/21/1952    SSN -0360
US Passport #556780448

**Page 7 of 14**

**POLICE CRIMINAL COMPLAINT**

| Docket Number:<br>CR.79.25 | Date Filed: | OTN/LiveScan Number<br>R 896175-0 | | Complaint/Incident Number<br>ASAP-1028865/I-247-2024 |
|---|---|---|---|---|
| Defendant Name | First:<br>MOSHE | | Middle: | Last:<br>SILBER |

According to this paperwork which was signed by Schulman, only Silber and Liani were the authorized signers on the bank account. Checks issued from this bank account were signed by Liani. The signatures were very similar to each other so most likely, a signature stamp was used.

Further review of these bank records shows that the monthly HUD subsidy for Mon View Heights was deposited each month into this bank account. It appears other income into the account included tenant rent payments and $707,344 from Merchants Bank (mortgage).

Thereafter, expenses paid from the Mon View Apts LLC bank account included but were not limited to:

Monthly interest payments to the mortgage holder (Merchants Bank),
Monthly tenant expense reimbursements (as required by HUD regulations),
Utilities,
Property insurance,
Property security services,
Entrata (HUD required) compliance software,
Cleaning services,
Landscaping services,
Marketing,
Computer support,
Maintenance answering service,
Payments to what appears to be a third-party line of credit, and
Payments to numerous outside contractors, including $647,866.43 to Glade Renovations, a company which is also located in Monsey, NY at 10 Golar Drive.

Detective Weibel learned through her investigation that the owner of Glade Renovations is Jay Ginsberg. Ginsberg formally worked for a company known as Dasmen Residential located in New Jersey which is owned by Michael Katz. During Ginsberg's employment with Dasmen Residential, the business shared a workspace with Mark Silber.

Glade Renovations' website includes a map of states where the company does business, however, Pennsylvania is not one of them. Additionally, the business is not registered as a contractor with the Pennsylvania Attorney General's Office, as is required by law to do business in the Commonwealth. On each of their invoices, Glade charges a 4% fee for workers compensation; however, there is no record of Glade every maintaining workers compensation as required by law in the Commonwealth of Pennsylvania.

Effective on August 1, 2024, Landex Management (WinnCompanies) entered into a contract to act as management agent for Mon View Heights. Winn set up a new bank account at Bank of America for Mon View Heights, which they solely controlled.

WinnCompanies Regional Vice President, Maureen Cassley told your Affiant that she was instructed by Mon View Heights ownership that while there were outstanding invoices to Glade Renovations, she should not worry about paying them as they were a related third-party company.

Additionally, there were payments from the Mon View Apts LLC bank account for $172,318 to NB Affordable LLC and $178,743 to Lakeside Property Management from this account.

 **POLICE CRIMINAL COMPLAINT**

| Docket Number: CR·79·25 | Date Filed: | OTN/LiveScan Number R 896175-0 | | Complaint/Incident Number ASAP-1028865/I-247-2024 |
|---|---|---|---|---|
| Defendant Name | First: MOSHE | | Middle: | Last: SILBER |

Detective Weibel reviewed a contract executed on June 1, 2024 that appointed NB Affordable as the Asset Management Group for Mon View Heights. Mon View Apts LLC representative Frederick Schulman signed on behalf of the LLC. Your Affiant learned that NB Affordable is also the asset manager for all the other local subsidized properties purchased from AHRCO by the same ownership group and according to HUD paperwork, is the ownership representative for Mon View Heights. NB Affordable is also known as Rhodium Capital Advisors whose principal is Mark Silber. Silber is one of the owners of Mon View Apts LLC and all of the other properties purchased from AHRCO.

Detective Weibel obtained bank records for the Valley National Bank account wherein the funds payable to Lakeside Property Management were deposited. The mailing address for this business is 46 Main Street Suite 223, Monsey, NY 10952, the same address as Mon View Apts LLC. A review of the application revealed that Mark Silber was the only principal of this company and he is the only authorized signer on this bank account.

Additionally, the Mon View Apts LLC bank records showed that there were numerous transfers to and from other unknown bank accounts held at Flagstar Bank. Your Affiant obtained bank records for the additional Flagstar Bank accounts wherein money was transferred to/from the Mon View Apts LLC account via a valid search warrant.

A review of these records indicated that funds were transferred in/out of the Mon View Apts LLC bank account from other local HUD subsidized properties owned by the same ownership group (purchased from AHRCO) which includes:

Gallatin Apts LLC,
Palisades Apts LLC,
Valley Royal Court Apts LLC,
Bedcliff Apts, LLC,
Bethesda Wilkinsburg Apts LLC,
Central Hill Apts LLC,
Elhome Apts, LLC,
Hill Com I LLC,
Hill Com II LLC, and
Kelly Hamilton Apts LLC.

A review of the bank account applications and signature cards for these accounts shows that these HUD subsidized properties are all owned by the exact same ownership group (Silber, Schulman and Liani) as Mon View Apts LLC.

Additionally, there were transfers in/out of other bank accounts which are not local real estate properties. These accounts are as follows:

$157,348.21 to EVU Residential LLC,
$ 10,000.00 to EVU Living LLC,
$ 94,000.00 from CBRM Realty LLC,
$189,951.85 to Pittsburgh Portfolio Apts LLC and
$950,128 to (and $1,281,255 from) Crown Capital Holdings LLC.

Detective Weibel learned from a review of these records that the sole owner of these LLCs and the only authorized signer on these four bank accounts was Mark Silber. All these bank accounts have the same mailing address as Mon View Apts LLC and Lakeside Property Management of 46 Main Street Suite 223, Monsey, NY 10952.

# POLICE CRIMINAL COMPLAINT

| Docket Number: CR 79-05 | Date Filed: | OTN/LiveScan Number R 896175-0 | | Complaint/Incident Number ASAP-1028865/I-247-2024 |
|---|---|---|---|---|
| Defendant Name | First: MOSHE | | Middle: | Last: SILBER |

A review of the EVU Residential LLC bank account shows money into this account from the Crown Capital Holdings LLC account, transfers from the other local HUD subsidized properties purchased from AHRCO and checks from other unknown real estate properties (wherein the issuing property address printed on the check is C/O EVU Residential LLC).

Checks and transfer out of this account include but was not limited to:

NB Affordable LLC,
Empire Blue Insurance,
AFLAC,
Shelton Gopstein, Esq,
The Corporate Traveler,
Rhodium Clearing Account,
Michelle Laguerre,
E-Wallet Divvy Inc,
Lakeside Property Management,
Pharm bills-Rhodium and
various credit card payments.

A review of EVU Living LLC account shows money into this account from the Crown Capital Holdings LLC account and funds from the other local HUD subsidized properties purchased from AHRCO, Lakeside Property Management and other unknown bank accounts.

Checks and transfers out of this account include but are not limited to:
Tax payments for various states,
Unknown vendor payments, and
Numerous checks to unknown individuals scattered throughout the country.

A review of the Pittsburgh Portfolio Apts LLC account shows money into this account from the Crown Capital Holdings LLC account and funds from the other local HUD subsidized properties purchased from AHRCO.

Checks and transfers out of this account include but are not limited to:
E-Wallet Divvy Inc,
The Corporate Traveler,
Bank Direct Capital and
Travelers Insurance.

This account normally maintained a balance of below $10,000 and more than once was overdrawn.

A review of the CBRM Realty LLC bank account shows large balances each month as well as individual large dollar transactions (some in excess of $1,000,000) of transfers from unknown bank accounts, large dollars transfer from Crown Capital Holdings LLC as well as checks deposited from various real estate holdings using the 46 Main Street Suite 223, Monsey, NY address printed on their checks.

Checks and transfers out of this account includes but is not limited to:
Large dollar transfers to unknown bank accounts,
Rhodium Clearing account,

**Page 10 of 14**

POLICE CRIMINAL COMPLAINT

| Docket Number: | Date Filed: | OTN/LiveScan Number | Complaint/Incident Number |
|---|---|---|---|
| CR.79.25 | | R 896175-0 | ASAP-1028865/I-247-2024 |

| Defendant Name | First: MOSHE | Middle: | Last: SILBER |
|---|---|---|---|

Rosenberg Rich Baker (Rhodium Asset Mgr) and
Numerous other unknown businesses.

A review of the Crown Capital Holdings LLC bank account shows similar activity to the CBRM Realty LLC bank records. Statements show very large balances and deposits, many each more than $1,000,000 which occurred several times each month as well as transfers in/out from unknown bank accounts and payments to many of the same unknown businesses as were made from the CBRM Realty LLC account.

Detective Weibel obtained copies of the Winn controlled Bank of American Mon View Heights bank records via a valid search warrant. A review of these records shows that tenant rent payments were deposited into this account and starting on September 4, 2024 and every successive month, the entire amount of the HAP voucher for Mon View Apts LLC, which was initially deposited into the Flagstar Bank account was wire transferred into this account.

These records also show that there were NO payments made from the Bank of America account to any of the related party businesses:

Lakeview Property Management LLC,
NB Affordable LLC,
Glade Renovations,
Crown Capital Holdings LLC,
EVU Residential LLC,
CBRM Realty LLC, or
Pittsburgh Portfolio Apts LLC,

where payments and/or transfers were made from the Mon View Apts LLC Flagstar Bank account in prior months.

Detective also obtained records from Merchants Bank, the mortgage holder for Mon View Heights via a valid search warrant. A review of these records indicated the following:

Loan A $16,902,000 to be utilized for the acquisition of four Section 8 properties including: Mon View Heights, Royal Valley Courts Apartments, Gallatin Apartments and Palisades Plaza, known as the AHRCO Portfolio.

Loan B $7,637,700 which was an open-ended line of credit.

These loans were both obtained effective February 23, 2023. The loan agreements for both loans show the "borrowers" as Mon View Apts LLC, Palisades Apts LLC, Gallatin Apts LLC and Royal Valley Court Apts LLC. These documents show that both mortgages were secured by the Mon View Heights property.

From loan B, $4,164,200 were earmarked to do capital improvements at 525 apartments at all four of the borrowers' locations. These renovations included $209,894 of energy efficient upgrades including installation of: low flow shower heads, low flow faucet aerators in kitchen and bathroom, low flow toilets, LED interior and exterior lighting, lighting controls, smart irrigation controls hot water tank and piping insulation and smart thermostats. According to the paperwork these upgrades were supposed to lower utility costs by $164,031.

The remaining $3,473,500 was earmarked as potential earn out not advanced at closing to be released at HUD 223(f) refinance.

# POLICE CRIMINAL COMPLAINT

| Docket Number: CR-79-25 | Date Filed: | OTN/LiveScan Number R 896175-0 | Complaint/Incident Number ASAP-1028865/I-247-2024 |
|---|---|---|---|
| Defendant Name | First: MOSHE | Middle: | Last: SILBER |

The personal guarantors on these loans were Mark Silber and Frederick Schulman.

Both loans had a requirement to pay monthly interest payments to Merchants Bank and both had a balloon payment for the full amount due in March of 2025.

The following draws were requested, approved and disbursed from Loan B:

| Draw | Req Date | Amount |
|---|---|---|
| 1 | 1/30/2024 | 166,917.49 |
| 2 | 2/7/2024 | 67,595.80 |
| 3 | 2/22/2024 | 95,873.03 |
| 4 | 3/4/2024 | 30,532.44 |
| 5 | 3/7/2024 | 18,747.14 |
| 6 | 3/22/2024 | 157,813.63 |
| 7 | 4/18/2023 | 23,008.64 |
| 8 | 5/13/2024 | 171,768.48 |
| 9 | 6/4/2024 | 50,882.76 |
| 10 | 7/10/2024 | 93,959.73 |
| | Total | 877,099.14 |

Merchant Bank records show that for each of the requested draws listed above, invoices for purported renovations were submitted to Merchant Bank. Detective Weibel reviewed these invoices from Glade Renovations which included approximately 170 for Mon View Heights, 14 for Palisades and 38 for Royal Valley Court Apartments. A review of the invoices for work purportedly done inside units at Mon View Heights shows work consistent with typical unit turnover items required when a resident vacates a unit. This work (such as but not limited to: removing trash, painting, completing a "punch list" of items needed before the next resident moves in, cleaning, etc.), while sometimes outsourced to a third party, is often completed by on-site maintenance staff employees. It is normally less costly to have employees perform this work as they are already being paid for their services by the property.

Detective Weibel compared the Mon View Heights invoices to the West Mifflin Code Enforcement Officer's unit inspections wherein out of the 129 units inspected, only 33 of them passed. In this comparison, it appears that Glade billed for work in 31 of the units which were inspected. Out of those 31, only 9 passed the code enforcement inspection and 22 failed.

A review of these invoices shows that many of them appear to simply be a "copy and paste" with numerous invoices billing for the exact same work completed with just a different date and unit number attached to them.

Each of the invoices bills for 4% of the total for Workers Compensation, although there is no evidence that the business ever maintained that insurance which is required under the law in the Commonwealth of Pennsylvania.

Many of these invoices also include $250.00 for Material Management Fee, even though there are other bills for "Material Reimbursement" with no detail of what materials were include in the billing.

Some of these invoices are very vague, stating things like door repairs as needed.

It appears that there was little or none of the earmarked energy efficiency work completed/billed as completed at Mon View Heights.

 **POLICE CRIMINAL COMPLAINT**

| Docket Number: CR.79.25 | Date Filed: | OTN/LiveScan Number R 896175-0 | | Complaint/Incident Number ASAP-1028865/I-247-2024 |
|---|---|---|---|---|
| Defendant Name | First: MOSHE | Middle: | Last: SILBER | |

On or about November 19, 2024, Merchants Bank filed a Complaint in Mortgage Foreclosure in Allegheny County Court of Common Pleas for non-payment and non-compliance of the mortgage. As part of this complaint, the court appointed a Receiver to take over day to day operations and whose responsibility it is to correct the issues that exist at the property and ensure that the HUD funds and tenant rents are used for the benefit of the residents at Mon View Heights.

Through the course of this investigation, your Detective Weibel learned that Mark Silber and Frederick Schulman have both been indicted the U.S. Attorney's Office in the District of New Jersey. This indictment stems from their roles as Managing Members of Rhodium Capital Advisors LLC and as controlling members of a shell company known as BRC Williamsburg Holdings LLC. Both have both subsequently plead guilty in U.S. District Court to one charge of Conspiracy to Commit Wire Fraud Affecting a Financial Institution and are currently awaiting sentencing.

This count stems from a scheme wherein Silber and Schulman gave false information to multiple lenders about the cost of a real estate property purchased by a shell company, BRC Williamsburg Holdings LLC.  More specifically about financing for Williamsburg of Cincinnati, an apartment complex purchased on or about March 2019 by BRC Williamsburg Holdings LLC.

According to the indictment, Silber and Schulman misled lenders and caused them to issue loans on the property for more than 75% of its value, which is a normal maximum amount of a loan by lenders on a multifamily property.

The indictment indicates that in February of 2019, Silber and Schulman stole the identity of a third party to purchase the above-mentioned real estate property for $70,000,000. They then sold the property to BRC Williamsburg Holdings LLC for $95,850,000. Thereafter, Silber and Schulman reported to a financial institution that the purchase price of the property was $95,850,000 and in March of 2019, which caused that institution to issue a loan of $74,250,000 on the property.

In March of 2019, a title company performed two real estate closings, one for the seller with a contract price of $70,000,000 and the other for the lender with a contract price of $95,850,000. This resulted in a $25,598,500 profit and the entire $70,000,000 purchase price being financed by the mortgage.

Your Affiant asserts that Silber, Schulman and Liani conspired to purchase Mon View Heights and other local HUD subsidized properties from AHRCO under newly created LLCs and thereafter, instead of using HUD tax payer dollars and tenant rent monies to ensure decent, safe and sanitary conditions at Mon View Heights as required by HUD, a large amount of those funds were diverted to bank accounts controlled by related party businesses wherein all but one (Glade Renovations) are owned and controlled by Mark Silber.

Your Affiant asserts that Silber, Schulman and Liani conspired to obtain a mortgage (Loan B) from Merchants Bank for four of the properties that they owned (Mon View Heights, Gallatin Apartments, Palisades Plaza and Royal Valley Court Apartments) which was to be secured by the Mon View Heights real estate with the stipulation that the majority of those funds were to be used for capital improvements at the four properties. Instead, they submitted invoices from a related party; Glade Renovations, mainly for work purportedly completed at Mon View Heights which if completed, was not capital improvements. Your Affiant asserts that while there is no evidence

Your Affiant asserts that Silber, Schulman and Liani conspired to divert funds from Mon View Heights residents that could have been used to bring the property into compliance with local codes, make units safe for families and bring more units into habitable conditions which would have generated additional income for the property.

Your Affiant asserts that approximately $580,039.29 in monies transferred to third party entities controlled by Mark Silber is theft

**Page 13 of 14**

# POLICE CRIMINAL COMPLAINT

| Docket Number: CR-79-25 | Date Filed: | OTN/LiveScan Number R 896175-0 | | Complaint/Incident Number ASAP-1028865/I-247-2024 |
|---|---|---|---|---|
| Defendant Name | First: MOSHE | | Middle: | Last: SILBER |

because those funds are not utilized for the benefit of Mon View Heights and its residents.

I, RONALD FREEMAN , BEING DULY SWORN ACCORDING TO THE LAW, DEPOSE AND SAY THAT THE FACTS SET FORTH IN THE FOREGOING AFFIDAVIT ARE TRUE AND CORRECT TO THE BEST OF MY KNOWLEDGE, INFORMATION AND BELIEF.

I CERTIFY THAT THIS FILING COMPLIES WITH THE PROVISIONS OF THE CASE RECORDS PUBLIC ACCESS POLICY OF THE UNIFIED JUDICIAL SYSTEM OF PENNSYLVANIA THAT REQUIRE FILING CONFIDENTIAL INFORMATION AND DOCUMENTS DIFFERENTLY THAN NON-CONFIDENTIAL INFORMATION AND DOCUMENTS.

/RONALD FREEMAN/

(Signature of Affiant)

Sworn to me and subscribed before me this 4 day of Febry , 2025

_____ Date _____ , Magisterial District Judge

My commission expires first Monday of January,

**CONFIDENTIAL**



# Confidential Information Form

| Docket Number: | Date Filed: | OTN/LiveScan Number *(LiveScan number preferred)* R 896175-0 | Complaint/Incident Number ASAP-1028865/I-247-2024 |
|---|---|---|---|
| **Defendant Name** | First: MOSHE | Middle: | Last: SILBER |

| NCIC Cautions and Medical Conditions *(check up to 9)* | | | | |
|---|---|---|---|---|
| ☐ 00 | ☐ 20 | ☐ 50 | ☐ 70 | ☐ 01 |
| ☐ 05 | ☐ 25 | ☐ 55 | ☐ 80 | |
| ☐ 10 | ☐ 30 | ☐ 60 | ☐ 85 | |
| ☐ 15 | ☐ 40 | ☐ 65 | ☐ 90 | |

| Scars, Marks, Tattoos (NCIC Codes) | |
|---|---|
| | |

Pursuant to the *Case Records of Public Access Policy of the Unified Judicial System of Pennsylvania*, the Confidential Information form shall accompany a filing where confidential information is required by law, ordered by the court, or otherwise necessary to effect the disposition of a matter. This form, and any additional pages, shall remain confidential, except that it shall be available to the parties, counsel of record, the court, and the custodian. This form, and any additional pages, must be served on all unrepresented parties and counsel of record.

| This Information Pertains To | Confidential Information | Reference in Filing |
|---|---|---|
| MOSHE SILBER<br><br>_____<br>(full name of adult)<br>**OR**<br>This information pertains to a minor with the initials of _____ and the full name of<br><br>_____<br>(full name of minor)<br><br>and date of birth: _____ | Social Security Number (SSN): 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 | Alternate Reference: |
| | Financial Account Number (FAN): | |
| | | Alternate Reference: |
| | Driver's License Number (DLN) 489074360 | |
| | State of Issuance: (DLN) NY | Alternate Reference: |
| | Expires (DLN) | |
| | | Alternate Reference: |
| | State Identification Number (SID) | |

Additional page(s) attached. _____ total pages are attached to this filing.

I certify that this filing complies with the provisions of the *Case Record Public Access Policy of the Unified Judicial System of Pennsylvania* that require filing confidential information and documents differently than non-confidential information and documents.

/RONALD FREEMAN/ _____    02/04/2025 _____
Signature of Attorney or Affiant                              Date

Name: _____    Attorney Number (if applicable) _____

Address: _____    Telephone _____

_____    Email _____

AOPC 412A – Rev. 05/10

**CONFIDENTIAL**

Page 1 of 1